The next case is number 22-1630. U.S. Securities and Exchange Commission v. Gregory M. Lemelson et al. At this time, would Attorney Martin introduce himself on the record to begin? Good morning, Your Honors, and may it please the Court, Kevin Martin for Father Emanuel Lemelson. I'm joined today by my colleague, William Evans, and I would like to reserve three minutes for rebuttal. You may have it. Thank you, Your Honor. Your Honors, the jury found that Father Lemelson did not engage in a scheme to shorten distort lag in stock, and it rejected the SEC's insolvency in Investors Act claims. With respect to the narrow Viking and Benzinga statements, I would like to start with materiality and to make three points. First, the Viking statements were not material as a matter of law because the correct information was found in the publicly available Form S-1 and so already was part of the total mix of information. Second, the SEC needed to prove the materiality of these three specific statements using evidence, but it had no evidence for the Viking statements at all. The SEC also had no evidence that reasonable investors considered the Benzinga statement important to their investment decisions. It had no stock price analysis, it had no expert testimony, and the only lay witness testimony and documentary evidence showed that investors taking into account other publicly available information did not credit these statements. Therefore, they were not material. I'm puzzled on one thing. Suppose that the S-1 says our product works and customers value it, and then someone knowing that the product works puts out a publication there saying the product doesn't work at all. I don't think we'd say, well, that's just the mix of information. We'd say that's a false allegation, and if it's true, it certainly means the stock isn't worth what it's trading at. Well, it would depend, Your Honor, upon the total mix of information. This Court repeatedly has said that you don't consider statements in the abstract. You ask what else investors know. Sure. But just because there's something to the contrary out in the total mix doesn't mean that the false allegation suddenly becomes immaterial. Otherwise, I mean, just think of the, it'd be a shooting gallery. You take someone's S-1, everything that's positive in it, you just publish a tweet saying it's all false. Right, and so a reasonable investor would not look at a random tweet by somebody making a statement about the company, which is based only upon the S-1 itself, and credit the random tweet over the S-1. It's important to recognize... Counsel, we're here after a jury trial. The jury was quite a discerning jury, as you started off by reminding us, although I'm not quite sure why, the jury rejected certain claims. But the issue before us is whether we would set aside a jury verdict that found that each of these statements on the total mix of evidence was material. You have to show us that no reasonable jury could possibly have drawn that conclusion, which can be based on inference, in order to win on the materiality issue. Like Judge Kayada, I don't think your S-1 statement actually gets you very far. So we're not, at this point, on the issue of admissibility of evidence. We're on the issue of whether any reasonable jury could have concluded these statements were material. Right, and so no reasonable juror could have concluded these statements were material. Why? Because, first, this Court has said several times that evidence is needed. I would point you to cases like Milton, City of Dearborn, and Flannery. They needed evidence. Now, what kinds of evidence can they use to meet their burden of proof on materiality? It might be stock price analysis. They didn't have that. It might be expert testimony. They didn't have that. Well, but this is a specific fact that's alleged. Viking does not intend to conduct any clinical studies, preclinical studies, or trials, does not own any products or intellectual property. It's a single-purpose vehicle. It's alleging it's a shell company, and if that were true, that would be pretty, would a lot of investors arguably find that relevant? And so, Your Honor, what this Court has said in cases like Carth v. Carrick's Biopharma is that you do not look at the statement in isolation. You also need to consider the statement in light of the total mix of information. And that works against you and not in your favor. Isn't it perfectly obvious that an investor would find that to be material? Not at all, Your Honor, because as Viking's own CEO acknowledged, no one would credit those statements, given what else they know about the way the FDA works, and given what they know, for example, with respect to the second Viking statement. Can we go back? Why are investors reading this newsletter from your client? And what's the purpose of the newsletter? So it is an investment newsletter. It was on a website, published on a website that's meant for investors. But again, the law is not that a false statement is enough for a 10b-5 violation. I am not suggesting anything of the sort, but isn't the newsletter out there in order to give investors information, which will be helpful to them in making investment choices? Your Honor, that is the point of it. But to prove a 10b-5 violation, they need to show not only that the false statement was made, but also that it would be material to an investor, important to their investment decisions, given what else they know. And then there are a series of three statements, each one of which is designed to undercut the viability of the company, its contracting company, its product. And why isn't that material? Because a reasonable investor takes into account all of the other information available to them. They do not consider the statements in isolation. The evidence at trial demonstrated, with respect to the two Viking statements, that reasonable investors would have access to the S1, they would have access to other information, and Viking CEO testified that a reasonable investor would not have credited those statements. With respect to the Benzinga statement, there was no evidence at trial that anyone credited that, given what else people knew about Promacta from other publicly available sources. In fact, all of the evidence was to the contrary. The one investor who showed up testified he did not believe it. All of the e-mails and other documents that were put into the record showed that nobody believed it because they had access to other information that was out there. I see my time has expired. I don't see anywhere in your briefs, or at least anywhere in the record, that the jury instructions that were provided were objected to, correct? The jury instructions were not objected to, Your Honor. Okay, so right now you're saying that somebody testified this way or it should be interpreted that way, but there's no issues with the jury instructions. The jury's then, given no objections, are presumed to follow the instructions. Doesn't that affect your case? Your Honor, it's always the case with a Rule 50B motion, which does not rely upon objections to the jury instructions, that the jury looked at the evidence and came to a conclusion contrary to the appellant. Nonetheless, Rule 50B exists for situations just like this one, in which you look at the record later and you determine there was not actually sufficient evidence for the result the jury came to, and we believe that's the case here. Even putting aside the materiality point, we had our additional arguments. Let me say, no objections to your instructions, that the evidence went in, whether some got objected, denied, you know, but what you're saying is, regardless of what went through the jury, from that evidence, no claim. So, for example, I think with respect to the materiality point, the SEC at trial, and again in its brief to this Court, has really emphasized stock price movements that were not linked to these three specific statements out of the total of 56 pages of negative commentary filed along the same line. I thought your client bragged about having driven down the stock price by 40%, and the SEC evidence was over shortly following the period of these statements. It went down 39%. Your Honor, Father Lemelson put out 56 pages of commentary attacking Ligand. There was no link between these three specific statements, which are quite narrow. I beg your pardon? You're the one who keeps telling us we have to look at all of the evidence, and you're saying, oh, we can disregard this because it was lost in 56 pages of commentary? Your Honor, the SEC has the burden of establishing materiality. That's their burden of proof. It's your burden now to show that the jury could not reasonably have drawn these conclusions. Correct, Your Honor, the jury could not reasonably, on a basis other than speculation, the jury could not have concluded that the reason why the stock moved was these three very narrow statements. With the Viking statements, there was no evidence that any investor ever mentioned them to anybody, and the CEO of Viking said, I wasn't concerned about it, my employees weren't concerned about it, nobody could have believed this. If we're looking at materiality, if I recall, the test is not that it in fact did influence the price, but rather that it's capable of influencing. It has to be a substantial likelihood that a reasonable investor would consider it important. Well, haven't we said that it's capable of influencing is what materiality means? It's not just may, it's a substantial, if you look at basic Supreme Court's decision, it has to be a substantial likelihood that it would be considered important. Well, let's use your test, substantial likelihood. Couldn't the jurors just say, this fellow seems to be pretty sophisticated, seems to be thinking he's being followed, has people who follow his letter, we think when he sent it out, there was a substantial likelihood it could affect it, that's why he sent it. No, Your Honor, that collapses the false statement and materiality prongs into one prong, that if the statement was made, then that's sufficient evidence of materiality. Well, no, because someone who is unsophisticated, who didn't know how investments work, didn't follow things closely, you wouldn't draw that inference. But I'm saying the jury might have drawn the inference from, here's someone who really would be in a position to know whether this is substantially likely to affect the price. No, Your Honor. They believed him inferentially over the other testimony. No, Your Honor, again, that would, that collapses the two prongs, if the statement was made, that's sufficient evidence that it must have been material, and it ignores the fact that materiality must be gauged in light of the total mix of information available to investors. The Court does not consider statements in isolation. Again, this is the, this Court has said this twice recently, in Carruth and also in Ponce and Rebelle. You do not consider the statements in isolation. You must always look at the total mix of information. Okay, thank you. You're getting repetitive, as are our questions. Thank you. Thank you, Your Honor. Thank you, Counsel. At this time, if Attorney Hill would introduce himself on the record to begin. Good morning, Your Honor. Ezekiel Hill for the Securities and Exchange Commission. May it please the Court. Your Honors, I'd like to begin with materiality, specifically with Father Lemelson's argument on appeal that a law is immaterial simply because it is contradicted by a public filing. That's not something this Court has ever said, and I'm not aware of any Court elsewhere having said that as well. As Father Lemelson's counsel has repeatedly said, and the Commission certainly agrees, context is important. And with respect to the statements that Father Lemelson made about Viking, those were statements made by an investment advisor in a publication specifically intended to influence investors. They were statements made about Viking, which was a private company, and they were made to influence the investors of Ligand, the public company. And the information that Father Lemelson's counsel points to is the S-1 of Viking, the private company, this 196-page document, and essentially the argument is that as a matter of law, anything that contradicts information in that 196-page document is immaterial as a matter of law. Because a reasonable investor should and could be tasked with going through that document to fact-check the statement made by the investment advisor and to determine that that statement is in fact false. He does say the argument on the other side isn't just that it was in the S-1. I think they also cite to testimony by company officials saying that they didn't think it affected anything. Your Honor, yes, Father Lemelson also cites testimony from Viking's chief executive officer. That testimony does not put into doubt the reasonableness of the jury testimony, excuse me, the jury verdict. And with respect to that testimony in particular, the Viking CEO, his testimony was one that nobody would believe that an S-1 had been filed with the SEC containing unaudited financials. That was certainly his view. He was the CEO of a large company about to go public. He'd also worked as a Wall Street analyst for 10 years in his prior professional capacity. And that was his view of what the information he brought to bear in reviewing Father Lemelson's statements. That does not necessarily mean that's the information that a reasonable investor would bring to bear on those statements. So if a jury had believed him that no one would pay any attention to that, then they would have ruled for him? Not necessarily, Your Honor. Because if they believed that no one would pay attention to it. Certainly if the test, as Your Honor referred to moments ago, is one of the substantial likelihood that information would be viewed by a reasonable investor as having significantly altered the total mix of information. And so the jurors, and the Supreme Court emphasized in TSC Industries, for example, that determining the materiality requires the finder of fact to perform a delicate assessment of the inferences that could be drawn from the facts and the significance of those inferences. And so simply the testimony by one individual that he didn't find Father Lemelson's statement plausible would not necessarily result in it being unreasonable for a jury to conclude. What you're saying is, of course, it's the jury's province that the appellants are attacking. In Rule 50, this is really a jury matter. The jury weighed everything. And you can credit testimony, weigh the evidence, and that's what happened. Certainly, Your Honor. It was not the district court's province with the Rule 50 motion, nor this court's province on appeal to weigh the evidence. The question is simply whether there was sufficient evidence for a reasonable jury to reach the verdict that the jury reached in this case. Were there substantial evidence of materiality in this case? In part, the jury could infer materiality from the content and the context of the misstatements. The misstatements were on issues of critical importance to ligand investors. Number one, as to the Viking deal, the Viking deal was of critical importance to the company. The evidence was that ligand had no capacity to develop its drug products itself, so it needed an outside entity to do that for it. And part of the deal, ligand stood to earn what one witness testified were billions of dollars in royalties from the deal. It was also going to acquire substantial equity in Viking. And so the Viking deal was of critical importance. And two, the misstatement was essentially that ligand, through its investment relations representative, had told Father Lemelson that Promocta, its key product, was going away. There's substantial evidence as to the importance of that product to ligand at the time that Father Lemelson made that statement and going forward. And so these misstatements went to core issues of importance for ligand and for ligand investors. Secondly, the misstatements were made by an investment advisor who ran what he claimed to be a top-performing hedge fund. The misstatements were made by that investment advisor as part of his efforts to persuade investors. The misstatements were central to his thesis as to why ligand had no value. And the misstatements were contrary to the other information that was public about the Viking deal and Promocta itself. Aside from drawing an inference of materiality from the context and the content of those statements, a jury could also infer materiality from the impact of those statements. The ligand executives testified, and there were documents of this effect, that they heard from numerous investors with concerns about Father Lemelson's public statements. In the words of ligand's CEO, these inquiries were relentless, investors were paying attention to his reports, and there was, he said, an obsession with those reports by investors. There's also substantial evidence that ligand executives were concerned themselves about Lemelson's public statements. And as Judge Lynch referred to earlier, Father Lemelson himself took credit for sinking ligand's stock price, and the jury could certainly credit his claim. There was also testimony from a professional investor, Robert Fields, that first of all, it would have influenced his investment decision if Promocta, that drug, was in fact going away, as Father Lemelson had claimed the company's IR representative had said. And two, it would have been important to him as an investor if Viking was in fact a shell company because of the revenue that the Viking deal represented to ligand over time. We've been focusing on three statements by the defendant that were responded to by the jury under question two on the verdict form, two, A, B, and C, that they answered yes to. They then answered no to D. Does it make any difference that they answered yes to A, B, and C as opposed to just A or just B? In other words, suppose, does the defendant need to prove that all three of those should have been no or would proving that only one of them should have been no change the result in the case? Well, Your Honor, if this court were to conclude that a reasonable jury could not have reached the verdict that this jury reached with respect to one of those statements or two of those statements, I believe the proper procedure would be for this court to remand to the district court to reconsider the remedies that it put in place because those remedies took into account the violation found by the jury and certainly if the violation was different, then the district court should reconsider the remedies. Counsel, the way I looked at the yes answer on A, B, and C is that anyone who was following the stock and reading the newsletter, having heard the untrue statement that the product was going away, would be particularly attentive to what was going on with this stock including what the clinical trials would prove and that the combination of A, B, and C kind of built on each other and supported the materiality of all three of them. And if the jury had concluded one of them was not material, I frankly would have been a little surprised by that. Your Honor, I'd agree certainly that the context here is important for all the statements and they're all part of Father Lemelson's series of statements regarding his investment thesis in Ligand and they're certainly all made by Father Lemelson in his effort to influence investors to take a particular view of Ligand to his financial benefit given the short positions that his hedge fund held in that stock. Are there further questions? Thank you for your time. Good morning again, Your Honors. Kevin Martin for the appellant. Your Honors, I'd like to just address a few points in rebuttal. First, the Fourth and Seventh Circuits have both clearly stated that, quote, even lies are not actionable when an investor possesses information sufficient to call the representation into question, so there are at least two other circuits that have considered the question what to do when there's an affirmative misstatement but the correct information is already out there. That is exactly this case and we urge this Court to follow what the Fourth and Seventh Circuits have done. Isn't that always going to be true? In other words, any publicly traded company, if someone publishes a bald-faced lie about the company, the company is always going to issue loudly and repeatedly a denial of it, so there'll always be contrary information out there in the marketplace. I mean, most securities cases are brought against companies, not against mere analysts, and the reason why they're brought against the company is that the company makes statements that someone says misrepresents what's happening internally to the company that's not publicly known. But that wasn't my question. My question was, isn't it almost always true that there will be contrary information in the general mix? That may be true, but you don't see cases brought against stock analysts for that reason. This also gets us to our First Amendment defense that we haven't spoken about yet, which is that if someone is saying, here are the facts that I'm commenting on. I'm commenting on what's in Vikings Form S-1, and here's the way I read the Form S-1, and an investor can go look at the Form S-1. They're not being told that the speaker has any additional information beyond what's out there publicly, and it's their take on that public information, then there's not a cause of action, whether it's under the securities laws for materiality or under the First Amendment, under this court's case law, like phantom touring. You don't see cases like this one, and that's why we think this is an especially troubling case, because you have the SEC going after someone for their comments on a company's publicly available filings. Again, there needs to be a space carved out for people to comment on things like this. Can you say fraudulent things about an S-1? No, it is not material under those circumstances, as the Fourth and Seventh Circuits have held. And this is not something buried in the public filings. If you look at the SEC counsel's closing argument, they emphasized how obvious it was in the Form S-1 that clinical studies would be conducted by third parties, and that there was at least a partial audit of Viking. So this is not, there's a body of case law where people have to kind of pull information from disparate sources. That is not this case. Now, was Viking important? Everything you heard today was attorney argument. There was a reference to Mr. Fields' testimony. Mr. Fields, the professional investor, didn't even remember these two specific statements about Viking. That's how unimportant they were. There was no evidence of any importance, and lots of evidence that they weren't important. The Benzinga statement, there was a mention of the Shell Company assertion. Mr. Fields remembered that, but that's separate from the two statements that were charged. That's not the two narrow statements that were charged. And just very quickly, Your Honors, if I may, the injunction issue, even if, I believe my friend on the other side conceded that if any of these statements are knocked out as to liability, then the injunction should not stand. I think even if all three statements are affirmed, the injunction still should not stand. The District Court relied upon improper factors in imposing this injunction, which can have career-destroying impacts for the appellant. Thank you.